USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/18/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JORGE PAREDES GUEVARA,

                Plaintiff,

-against-

A&P RESTAURANT CORP., ANASTASIO
GIONNOPOULOS, AND PETER
GIONNOPOULOS,

                Defendants.

No. 24-CV-00522 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Jorge Paredes Guevara ("Plaintiff") initiated this action on January 25, 2024, alleging claims of interference, retaliation, and discrimination pursuant to the Family and Medical Leave Act ("FMLA") and New York Labor Law § 215 ("NYLL") against A&P Restaurant Corporation ("A&P"), Anastasio Gionnopoulos, and Peter Gionnopoulos (collectively, the "Defendants"). Pending before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint ("FAC").[1] (ECF No. 32.) Defendants seek to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

    For the following reasons, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

    Beginning on or around April 2021, Plaintiff became employed with A&P as a W2 non-exempt employee. (FAC ¶¶ 17–18.) A&P is owned by Defendants Anastasio and Peter

---

[1] The FAC initially pursued claims under (1) the FMLA, alleging interference with the exercise of protected rights, as well as retaliation, discrimination, and failure to accommodate; (2) NYLL § 215, alleging retaliation; and (3) NYEL § 296, alleging discrimination and failure to accommodate. (FAC ¶¶ 43–80.) However, Plaintiff now voluntarily withdraws his FLMA discrimination and accommodation claims, in addition to his NYEL § 296 claims. (See ECF No. 45, "Pl. Opp.," at 1.) The Court will thus only consider Plaintiff's FMLA interference and retaliation claims, and NYLL § 215 retaliation claim.

1

Gionnopoulos. (*Id*. ¶¶ 9, 12.) Defendants employed Plaintiff as a cook, where he was responsible for preparing and cooking meals. (*Id*. ¶ 20.) Plaintiff was also responsible for maintaining a clean and organized kitchen, which included cleaning equipment, dishes, and utensils. (*Id*.)

Sometime in October 2023, Plaintiff began taking on additional tasks due to a shortage of dishwashing staff. (*Id*. ¶ 28.) These tasks included washing dishes and entering the refrigerator. (*Id*.) Meanwhile, Plaintiff was still expected to continue cooking in the kitchen. (*Id*.) According to Plaintiff, he was exposed to "extreme temperature changes" between entering the kitchen and refrigerator. (*Id*.) As a result, Plaintiff developed a severe cough and fever, which required him to seek medical attention. (*Id*. ¶ 29.) For instance, on October 21, 2023, Plaintiff informed his manager, Farug, that he had "pneumonia" and could not "work on Monday." (*Id*. ¶ 25.) Despite returning to work, on October 29, 2023, Plaintiff requested permission from his manager, Catalino, to leave work early due to his persisting medical symptoms. (*Id*. ¶ 29.) Catalino granted Plaintiff permission to leave. (*Id*.) This was the last date Plaintiff worked at A&P. (*Id*. ¶ 19.)

On October 30, 2023, Plaintiff requested medical leave from Catalino and asked for 15-days off to recover from his cough and fever. (*Id*. ¶ 30.) Plaintiff was having difficulty breathing, running a high fever, and lacked energy to get out of bed. (*Id*.) Catalino approved Plaintiff's request. (*Id*.) Due to Plaintiff's condition, he was bedridden from October 30 through November 9, 2023. (*Id*. ¶ 31.) During this time, Plaintiff periodically informed Catalino of his condition. (*Id*. ¶ 32.)

Plaintiff eventually went to the emergency room on November 8, 2023, where doctors performed x-rays on his chest and prescribed him a cough suppressant (Benzonatate) and medicine for his fever (Acetaminophen). (*Id*. ¶ 33.) Plaintiff's patient chart also reflects that he was "[e]valuate[d] for pneumonia." (*Id*.) According to Plaintiff, the doctors could not diagnose his

2

condition, suggesting that he had a "viral infection." (*Id*.) The doctors nevertheless cleared Plaintiff to return to work but recommended that he should return to the emergency room if his fever persisted or worsened within the next five days. (*Id*.) Plaintiff also received a doctor's note, excusing his absence from work only for the date of November 8, 2023. (*Id*.)

After leaving the emergency room, Plaintiff visited A&P and informed Defendants that he was cleared to return to work. (*Id*. ¶ 36.) However, Defendants informed Plaintiff that he was terminated and that they had already hired a replacement. (*Id*.)

## PROCEDURAL HISTORY

Plaintiff commenced this action on January 25, 2024. (ECF No. 1.) Defendants moved to dismiss Plaintiff's Complaint on August 20, 2024. (ECF Nos. 23–25.) The Court granted Defendants' motion in its entirety. (ECF No. 28.) On April 3, 2025, Plaintiff filed the FAC. (ECF No. 32.) Defendants moved to dismiss the FAC on August 25, 2025. (ECF No. 44.) Plaintiff opposed the motion. (ECF No. 45.) Defendants filed a reply memorandum in further support of their motion. (ECF No. 46.)

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rules of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction… when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (citation and internal quotations omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material

facts alleged in the complaint. *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009). Without jurisdiction, the Court is devoid of the "power to adjudicate the merits of the case," and for that reason, a court must decide a Rule 12(b)(1) motion before any motion on the merits. *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).

## II.  Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555). "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence," this Court "may review only a narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff brings claims pursuant to (1) the FMLA, alleging interference and retaliation, and (2) NYLL § 215, alleging retaliation. (FAC ¶¶ 55, 61, 67.) The Court will address each claim in turn.

### I. FMLA Interference and Retaliation Claims

Plaintiff first brings claims pursuant to the FMLA, alleging interference with the exercise of protected rights, as well as retaliation of such rights. The FMLA gives eligible employees the right to take up to 12 work weeks per year of unpaid leave due to a serious health condition that prevents the employee from performing his work function. 29 U.S.C. § 2612(a)(1). An employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the statute. *Id.* § 2615(a)(1). To this end, "[t]he FMLA 'creates a private right of action to seek both equitable relief and money damages against any employer… in any Federal or State court of competent jurisdiction' should that employer 'interfere with, restrain, or deny the exercise of FMLA rights.'" *Murray v. City of New York*, 2024 WL 3553266, at *10 (S.D.N.Y. July 26, 2024) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006)).

This Court previously held that Plaintiff was not entitled to FMLA leave because he failed to allege that he suffered from a serious health condition. (ECF No. 28 at 5–6.) Despite granting Plaintiff leave to amend his pleadings, he still fails to satisfy this vital threshold. The FMLA defines a "serious health condition" to include "an illness, injury, impairment or physical or mental condition that involves inpatient care" or "continuing treatment by a health care provider." 29 C.F.R. § 825.113. Continuing treatment means receiving "(1) [t]treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider" or "(2) [t]treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care

5

provider." *Id*. § 825.115(a)(1)–(2). The requirement for "treatment by a health care provider" necessitates that an employee's "first (or only) in-person treatment visit must take place within seven days of the first day of incapacity." *Id*. § 825.115(a)(3).

Plaintiff initially alleged that he suffered from "early-stage bronchitis." (Compl. ¶ 33.) Plaintiff now alleges that he potentially suffered from a "viral infection" or "pneumonia." (FAC ¶ 33.) Despite this discrepancy, Plaintiff's viral infection or pneumonia does not suffice the FLMA's possible definitions of a "serious health condition." Plaintiff's incapacity began on October 30, 2023. (*Id*. ¶ 31.) Plaintiff's first and only doctor's appointment was to the emergency room on November 8, 2023. (*Id*. ¶ 33.) As a threshold matter, Plaintiff did not receive treatment "within seven days of the first day of incapacity." 29 C.F.R. § 825.115(a)(3). Regardless of this deficiency, Plaintiff similarly did not receive treatment "two or more times… within 30 days" of his first day of incapacity. *Id*. § 825.115(a)(1). Nor did Plaintiff receive treatment which resulted in a "regimen of continuing treatment under the supervision of [a] health care provider." *Id*. § 825.115(a)(2). While Plaintiff was prescribed a cough suppressant and Acetaminophen—which is essentially Tylenol—being prescribed over the counter medication does not constitute a "regimen of continuing treatment under the supervision of [a] health care provider." *Id*.

Even liberally construed, Plaintiff's allegations supporting his viral infection and/or pneumonia fail to constitute a "serious health condition" within the meaning of the FLMA. The Court therefore dismisses Plaintiff's FMLA interference and retaliation claims with prejudice.

## II.  NYLL § 215 Retaliation Claim

The Court now turns to Plaintiff's retaliation claim pursuant to NYLL § 215. Under NYLL § 215 an employer is prohibited from discharging, threatening, penalizing, or otherwise discriminating against an employee who complains about a violation of the NYLL. N.Y. Lab. Law

§ 215(1)(a).  To establish a claim under NYLL § 215(1)(a), a plaintiff "must show that []he complained to [his employer] about its violations of the Labor Law and that []he was terminated because of h[is] complaints." *Robledo v. No. 9 Parfume Leasehold*, 2013 WL 1718917, at *7 (S.D.N.Y. Apr. 9, 2013) (citing *Jacques v. DiMarzio, Inc.,* 200 F.Supp.2d 151, 162 (E.D.N.Y. 2002)).  Just as before, Plaintiff has again failed to allege that he complained to Defendants about a potential NYLL violation.  (ECF No. 28 at 7.)  Indeed, Plaintiff only alleges that he was terminated upon visiting Defendants from the emergency room.  (FAC ¶¶ 36–37.)  The Court therefore dismisses Plaintiff's NYLL § 215 retaliation claim with prejudice.

### III.  Sanction Claims

While not filed as a stand-alone motion or granted leave to do so by this Court, Defendants seek sanctions.  (ECF No. 46, "Defs. Reply," at 5.)  Defendants assert that Plaintiff's counsel misquoted caselaw, cited to non-existent decisions, and referenced authorities that do not support the propositions for which they are cited.  (*Id.*)

Federal Rule of Civil Procedure 11(b)(2) requires that legal assertions be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11.  "[T]he duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely." *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024).  An attorney's reliance "on nonexistent authority" demonstrates that an attorney "made no inquiry, much less the reasonable inquiry required by Rule 11." *Id*.  "A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law.  An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023).  On its own, a court

7

"may order an attorney, law firm, or party to show cause why conduct [their]… has not violated Rule 11(b)." *Id*. at 462.

Upon reviewing Plaintiff's opposition, it is obvious that it contains misquoted and non-existent caselaw. For instance, Plaintiff's counsel cites to *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1110–11 (9th Cir. 2001) for the assertion that an employee who was prescribed medication and instructed to monitor their medical symptoms was deemed to have a serious health condition under the FMLA. (Pl. Opp. at 11.) However, *Baldwin* does not mention the FMLA and involves FLSA and breach of contract claims. *See Baldwin*, 266 F.3d at 1108. Even more concerning, Plaintiff's counsel appears to cite cases that do not exist, including *Kennedy v. Cmty. Action Servs.*, 107 F. Supp. 2d 993, 998–99 (N.D. Ind. 2000) and *Marrero v. Camden Steel Co.*, 850 F. Supp. 188, 193–94 (D.N.J. 1994). (Pl. Opp. at 12.) Defendants also provide several examples of Plaintiff relying on fictitious quotes from cases.[2] (*See* Defs. Reply at 6.)

Consequently, counsel for Plaintiff is forewarned that such conduct falls within the realm of sanctionable conduct. Whether to impose sanctions falls within the Court's sound discretion. At this time, however, the Court chooses not to impose sanctions. Nevertheless, if Plaintiff's counsel's unacceptable conduct persists, the Court may take appropriate action in the future.

### IV. Leave to Amend

Courts are to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has counseled courts not to dismiss a complaint with prejudice prior to issuing a ruling that highlights the "precise defects" of those claims. *Williams v. Citigroup*

---

[2] One example is Plaintiff's citation to *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014). (Pl. Opp. at 14.) According to Plaintiff's counsel, *Johnson* includes the following non-existent quote: "a complaint need not pin plaintiff's claim for relief to a precise legal theory." (*Id*.) Another example is Plaintiff's counsel quoting non-existent sections of NYLL § 215. (*See* Pl. Opp. 16) (quoting NYLL § 215 for the proposition that "[a]n employee shall not be required to refer to this section or any other provision of law to be protected by the provisions of this section").

*Inc.,* 659 F.3d 208, 214 (2d Cir. 2011) (per curiam). If a complaint's deficiencies are "substantive" as opposed to "inadequately or inartfully" pled, an opportunity to replead would be "futile" and "should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Milanese v. Rust—Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice, or futility.")

The Court finds that it would be futile to grant Plaintiff leave to amend the FAC. While Plaintiff has included a few additional conclusory allegations, these allegations fail to salvage his interference and retaliation claims. It is also unclear whether the FAC reflects some inclination of bad faith. For instance, Plaintiff changed his underlying health condition from "early-stage bronchitis" to a "viral infection" and/or "pneumonia." (Compl. ¶ 33 *compare with* FAC ¶ 33.) Another example is that the FAC alleges that Plaintiff was discriminated by Defendants "for taking leave and treating **her** less favorably than other employees who were **not pregnant** or dealing with **pregnancy-related complications**." (FAC ¶ 46.) (emphasis added).

The Court therefore declines to grant Plaintiff, who is represented by counsel, leave to amend at this time. *See Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45–46 (2d Cir. 2008) (district court did not exceed its discretion by not *sua sponte* granting leave to amend where Plaintiff had already amended complaint once and amendment would have been futile).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's FAC is GRANTED. The Court dismisses with prejudice Plaintiff's FAC in its entirety without leave to amend.

Dated: November 18, 2025  
      White Plains, NY

SO ORDERED.

_____  
Nelson S. Román, U.S.D.J.

9